UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ARDRA YOUNG,

        Plaintiff,        Case No. 1:09-cv-67

v.        Honorable Robert Holmes Bell

CARMEN PALMER et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Palmer, Stewart, Kipp, Harry, Singleton, Walker, Brevard, Vialpondo, Barbier and Wright. The Court will serve the complaint against Defendants Bonn, Weathersby and Fields.

**Discussion**

      I.        Factual allegations

Plaintiff Ardra Young presently is incarcerated at the Muskegon Correctional Facility (MCF). The actions he complains of occurred both while he was housed at MCF and while he was housed at Riverside Correctional Facility (RCF). He sues the following RCF employees: Warden Carmen Palmer; Deputy Warden Anthony Stewart; Assistant Deputy Warden Timothy Kipp; and Assistant Resident Unit Supervisor Douglas Bonn. He also sues the following MCF employees: Warden Shirlee Harry; Deputy Warden Michael Singleton; Assistant Deputy Warden Sharon Walker; Grievance Coordinator Matt Brevard; Classification Director Mario Vialpando; Resident Unit Manager Brett Barbier; Assistant Resident Unit Supervisor Beverly Weathersby; Mail Room Clerk Joannie Fields; and Correctional Officer Wade Wright.

In his complaint, Plaintiff complains about three basic sets of circumstances. First, he alleges that on April 17, 2007, while he was housed at RCF, he prepared written correspondence for his attorney at the Federal Defender's Office. He also prepared a separate letter to attorney Michael Cafferty. He plainly addressed both envelopes as legal mail, sealed them and presented them for mailing. Defendant Bonn ordered Plaintiff to unseal both mail items, and Bonn read the contents of his letters over Plaintiff's vehement objections and assertions of attorney-client privilege. That same day, Plaintiff sent Bonn a letter declaring that Bonn had violated Plaintiff's First and Sixth Amendment rights, and he sent a copy of the letter to Defendants Palmer, Stewart and Kipp. He also filed a grievance. On May 3, 2007, Plaintiff submitted another sealed letter to his court-appointed attorney, together with a letter addressed to another prisoner. Though Bonn again ordered the legal mail unsealed and read, he did not review the non-legal mail addressed to the prisoner.

Second, Plaintiff complains of circumstances arising out of a mail rejection at MCF on August 26, 2008. Plaintiff alleges that Defendant Fields issued a notice of mail rejection, which was presented to Plaintiff on August 26, 2008 by Defendant Weathersby. Plaintiff indicated on the notice that he was requesting an administrative hearing. Plaintiff also sent a notice to Defendant Fields that he had requested a hearing, and he mailed a copy of that notice to Defendants Barbier and Weathersby. On September 4, 2008, Weathersby presented Plaintiff with an administrative hearing report that she had prepared and signed, indicating that she had conducted a hearing. The next day, Plaintiff sent a notice to Weathersby, advising her that the administrative hearing report was false because he had not been given a hearing, and Plaintiff again requested a hearing. Plaintiff sent a copy of his notice to Defendant Harry. On September 8, 2008, Harry told Plaintiff that the mail in question was a threat to prison security. Weathersby issued an amended hearing report on September 10, 2008, stating that a hearing had been held on that date. Plaintiff wrote to Harry, who, on September 11, 2008, told him the matter was being referred to Defendant Walker. On September 11, 2008, Weathersby served a third hearing report, stating that a hearing was held on September 11, 2008. On September 17, 2008, Plaintiff filed a grievance against Harry, Fields, Barbier, and Weathersby. Plaintiff met with ADW Walker and, based on her representations that she would investigate thoroughly, Plaintiff dropped his grievance. Plaintiff asked Walker to review the videotapes, which he alleged would show that Weathersby never conducted a hearing. On September 27, 2008, Weathersby summoned Plaintiff without notice, "excoriated Plaintiff for his letters to Harry, and stated that she was going to conduct a hearing." (Am. Compl., ¶ 13(t).) Plaintiff objected to the absence of notice, but Weathersby conducted the hearing anyway. Weathersby issued her fourth administrative hearing report on September 28, 2008. Plaintiff

complained to Harry, who advised that he file a grievance. On October 1, 2008, Plaintiff was given a fifth administrative hearing report from Weathersby.

        The third set of allegations involve Plaintiff's assignment to yard crew on September 15, 2008. On September 13, 2008, Plaintiff suffered a severe allergy attack that required emergency medical treatment. Two days later, Plaintiff was assigned to the yard crew. Plaintiff objected to the job assignment on the basis of his allergy condition. On September 19, because he had refused his assignment, Plaintiff was reclassified to 0-0 status (unemployable status), which restricted him to his cell on weekdays between 8:00 a.m. and 4:30 p.m. On September 21, Plaintiff wrote to Warden Harry, informing her of his concerns that the yard crew assignment would cause his allergy condition to flare and requesting reassignment and removal from 0-0 status. Harry responded on September 22, 2008, advising Plaintiff that he should be willing to work. Harry further advised Plaintiff on September 23, 2008 that she recommended that he try the yard crew detail for 90 days. On September 27, 2008, Plaintiff reported to his yard crew assignment. On October 17, 2008, after Plaintiff had worked three weeks, Plaintiff was approached by Defendant Wright, who ordered him to turn in his equipment in accordance with an order Wright had received, which placed Plaintiff on 0-0 status. Plaintiff again wrote to Harry, who responded on October 23 that Plaintiff apparently was confused by Harry's earlier correspondence and indicating that Plaintiff could not expect that he could just show up for work after having refused. Instead, he was required to wait 30 days to be reclassified. Plaintiff sent a notice to Harry on November 18, 2008, stating that he was improperly being maintained on 0-0 status without justification. On November 18, 2008, Harry notified Plaintiff that she was placing him on the Modified Access list because he had submitted five grievances that

were rejected. On November 20, 2008, Harry notified Plaintiff that he would be released from toplock on November 21, 2008. Plaintiff allegedly remained on 0-0 status until November 24, 2008.

Plaintiff alleges that Defendants' actions at RCF violated MDOC policy and violated Plaintiff's First Amendment right to attorney-client privilege. He alleges that Defendants Palmer, Stewart and Kipp are liable because they had supervisory authority over Defendant Bonn and they failed to address the problem when notified by Plaintiff.

Plaintiff alleges that the MCF Defendants violated MDOC policy by failing to provide a hearing about the confiscation of his incoming mail. Plaintiff alleges that Harry conspired with his subordinates to retaliate against Plaintiff for filing grievances by maintaining Plaintiff on 0-0 status after Plaintiff had followed Harry's advice to report to yard crew. He alleges that she further retaliated against him by placing him on modified access status for abusing the grievance process. In addition, Plaintiff asserts that Defendants Barbier and Brevard violated MDOC rules and the First, Fifth and Fourteenth Amendments by improperly responding to and rejecting grievances to keep Plaintiff on modified access. He contends that Defendant Singleton conspired with Harry and Brevard to place Plaintiff on modified access status by rejecting a grievance and answering a grievance in which he was named. Plaintiff also alleges that Defendant Walker conspired with Defendants Weathersby, Barbier and Harry to conceal the fact that Weathersby failed to conduct an administrative hearing, in violation of MDOC policy and the First, Fifth and Fourteenth Amendments. Plaintiff also contends that Defendant Weathersby deprived him of a hearing, conspired with Walker and Barbier to create the fiction that a hearing had been conducted, and drafted five falsified hearing reports. He alleges that Defendant Fields, as a mail room staffer,

deprived him of his First, Fifth and Fourteenth Amendment rights when she rejected his incoming mail on a ground outside the mail policy.

With respect to the yard crew issue, Plaintiff alleges that Defendant Wright, in conspiracy with Defendant Vialpando, issued a fraudulent misconduct ticket and drafted a fraudulent work evaluation against Plaintiff for exercising his option to terminate his employment after 90 days.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v.* Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations repecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Due Process – Grievance Procedure

Plaintiff raises claims under the Fifth and Fourteenth Amendments, alleging that Defendants Barbier, Brevard, Singleton and Harry violated his right to due process by improperly rejecting or responding to grievances. He further alleges that he was deprived of due process by Singleton, Harry and Brevard when they placed him on modified access status.

Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, to the extent Plaintiff alleges that his constitutional rights were infringed by Defendants' violations of grievance policies, he also fails to state a claim. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106

(1984). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994). Plaintiff's due process claims against Defendants Barbier, Brevard, Singleton and Harry therefore will be dismissed for failure to state a claim.

### B.     Due Process – Prison Employment

Plaintiff alleges that Defendants Wright, Vialpando and Harry violated his due process rights by improperly placing and continuing him on 0-0 status thereby preventing him from working as provided in MDOC policies. He also alleges that Defendant Wright, in conspiracy with Vialpando, violated his right to due process by issuing a poor work evaluation.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff clearly has failed to suggest that his placement on 0-0 status imposes an atypical and significant hardship. Plaintiff's sole complaint is that he was confined to his cell on Mondays through Fridays during normal work hours from 8:00 a.m. to 4:30 p.m. Such concerns fail to rise to the level of a due process violation.

To the extent Plaintiff raises a due process challenge to the termination of his prison employment and the fairness of his work evaluation, he also fails to state a claim. The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment. Moreover, because he has no protected liberty interest in any prison employment, he fails to state a claim regarding any evaluation of that performance that might affect his future employment placement.

### C. Misconduct Charge

Plaintiff alleges that Defendants Wright and Vialpando issued a fraudulent misconduct against him when he "exercis[ed] his option to terminate his employ upon the conclusion of 90-days." (Am. Compl. at 17, docket #9 at 20.) Plaintiff's allegations essentially challenge the validity of his misconduct conviction. The Supreme Court has held that claims for declaratory relief and monetary damages that necessarily imply the invalidity of the punishment imposed are not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The *Edwards* Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007); *Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges).

Case 1:09-cv-00067-RHB-JGS   ECF No. 13 filed 04/01/09   PageID.256   Page 11 of 17

In *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *Id.*; *Thomas*, 481 F.3d at 439; *Johnson v. Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004). The Court noted that "[t]he effect of disciplinary proceedings on good-time credits is a matter of state law or regulation." *Muhammad*, 540 U.S. at 754. Under Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated good-time credits in certain cases. *Id.* Plaintiff does not assert that he did not forfeit good-time credits for the month of his conviction. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, 102 F. App'x 900, 901 (6th Cir. 2004).

A prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Major Misconduct Hearing Report is received. MICH. COMP. LAWS § 791.254; MICH. DEP'T OF CORR. Policy Directive 03.03.105, ¶ DDD (effective Jan. 1, 2007). Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ GGG (concerning appeal). If he is not successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[1]

---

[1] A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened" prison sentence is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973). However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

- 11 -

Plaintiff makes no allegations about whether he sought to overturn his misconduct conviction in the state courts or in a federal habeas petition. Moreover, his allegations suggest that his conviction has not been invalidated. Accordingly, Plaintiff's § 1983 claim is not presently cognizable. He therefore fails to state a claim on which relief can be granted. *See Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (same); *Harris v. Truesdell*, 79 F. App'x 756, 758-59 (6th Cir. 2003) (same).

### D.     Retaliation by Defendant Harry

Plaintiff raises a retaliation claim only against Defendant Harry. He alleges that Harry retaliated against him for exercising his First Amendment right to file grievances. Plaintiff's complaint contains two allegedly retaliatory acts: (1) Harry's placement of Plaintiff on modified access; and (2) Harry's continuation of Plaintiff's 0-0 work status designation between October 22, 2008 and November 24, 2008.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The placement on modified access does not constitute adverse action that would deter a person of ordinary firmness from exercising his protected rights. *See Kennedy v. Tallio*, No. 01-1386, 2001 WL 1176400, at *2 (6th Cir. Sept. 26, 2001); *Corsetti v. McGinnis*, No. 00-1409, 2001 WL 1298830, at *2 (6th Cir. Aug. 7, 2001). Placement on modified access did not deprive Plaintiff of the ability to file proper grievances. His placement on modified access to the grievance procedure merely enabled prison officials to screen his grievances prior to filing in order to determine whether they were grievable, non-frivolous, and non-duplicative. *See* Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP); *Kennedy*, 2001 WL 1176400, at *2.

In addition, even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.

Plaintiff's allegation that Harry retaliated against him by placing him on 0-0 status also fails to state a claim. Even if placement of a prisoner on 0-0 status amounts to adverse action,[2] Plaintiff fails to allege the necessary causal connection between his attempts to file grievances and his placement on 0-0 status. It is well recognized that "retaliation" is easy to allege and that it can

---

[2]Placement on 0-0 status results in a prisoner being confined to his cell on Monday through Friday during the work day, that is, from 8:00 a.m. until 4:30 p.m. (*See* Am. Compl. at 6, docket #9.) Given that the status is imposed only upon those prisoners who do not work and who, presumably, would be at their job duties during those hours, placement on the status does not necessarily deprive a prisoner of any significant privilege. It therefore is questionable whether placement on 0-0 status is sufficiently adverse to support a retaliation claim.

seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Harry retaliated against Plaintiff by continuing him on 0-0 status between his first letter of complaint on October 22, 2008 and his second letter of complaint on November 19, 2008. *See Shehee v. Grimes*, 39 F. App'x 127, 129 (6th Cir. 2002) (holding that a prisoner's allegation that defendants retaliated against him by, *inter alia*, changing his work schedule was conclusory, absent factual allegations to support the claim). To the contrary, the only evidence contained in the attachments to the complaint indicates that Harry routinely and courteously replied to Plaintiff's letters about his status and corrected his status on November 20, 2008, in response to his letter. (*See* App. II to Am. Pet. at 74, 79, docket #11 at 35, 40.) As the Court previously discussed, while a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965;

*Lewis*, 135 F.3d at 405 (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). Plaintiff's allegations about Defendant Harry's retaliation therefore fail to state a claim.

### E. Supervisory Liability

Plaintiff fails to make any allegations against Defendants Palmer, Stewart, and Kipp, other than his claim that they failed to conduct an investigation or otherwise adequately respond to his grievances and kites. In addition, Plaintiff's remaining allegations against Defendants Harry, Singleton, Walker, Brevard, and Barbier involve their failure to adequately respond to Plaintiff's grievances and kites.

A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has failed to allege that Defendants Palmer, Stewart, Kipp, Harry, Singleton, Walker, Brevard, Vialpondo and Barbier engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### F.     Conspiracy

At numerous points in his complaint, Plaintiff alleges generally that one or more Defendants conspired with other Defendants to deprive him of his rights. To state a claim for conspiracy, a plaintiff must plead with particularity, since vague and conclusory allegations unsupported by material facts are insufficient. *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

All of Plaintiff's allegations of conspiracy are vague, conclusory and speculative. He therefore fails to state a claim for conspiracy.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Palmer, Stewart, Kipp, Harry, Singleton, Walker, Brevard, Vialpondo, Barbier and Wright will be dismissed for failure to state a claim pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Bonn, Weathersby and Fields.

        An Order consistent with this Opinion will be entered.


Dated:  <u>April 1, 2009</u>                          <u>/s/ Robert Holmes Bell</u>
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE