UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

ARDRA YOUNG, #260575,           )
                                )
                   Plaintiff,   )         Case No. 1:09-cv-67
                                )
v.                              )         Honorable Robert Holmes Bell
                                )
BEVERLY WEATHERSBY, et al.,     )         **REPORT AND RECOMMENDATION**
                                )
                   Defendants.  )
_____ )

      This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983.
Plaintiff alleges that Assistant Resident Unit Supervisor (ARUS) Douglas Bonn violated his First
and Sixth Amendment rights on April 17, 2007, and May 3, 2007, at the Riverside Correctional
Facility (RCF), by requiring plaintiff to submit unsealed envelopes for expedited mail.  In an
unrelated claim, he alleges that Mail Room Clerk Joni Fields violated his First and Fourteenth
Amendment rights at the Muskegon Correctional Facility (MCF) on August 26, 2008, when she
issued a Notice of Mail Rejection for incoming mail from prisoner McConnell Adams.  He alleges
that ARUS Beverly Weathersby, acting as a hearing officer, violated his First and Fourteenth
Amendment rights when she rejected the mail from Adams.  Plaintiff seeks an award of damages
against defendants in their individual capacities.

      The matter is before the court on a defendants' motions for summary judgment.
(docket #s 44, 85).  For the reasons stated herein, I recommend that defendants' motions be granted
and that a final judgment be entered in defendants' favor on all plaintiff's claims.

## <u>Applicable Standards</u>

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

## **Proposed Findings of Fact**

The following facts are beyond genuine issue.[1]  Plaintiff is an inmate in the custody of the MDOC at the Pine River Correctional Facility (SPR)(docket # 98), where he is serving two non-parolable life sentences imposed in 1997 on his first-degree murder convictions.  *See People v. Young*, No. 208788, 2000 WL 33521874 (Mich. Ct. App. Mar. 14, 2000).  His civil rights claims relate to a period of previous confinement at MCF.

### 1.     **ARUS Dale Bonn**

On April 17, 2007, plaintiff was an inmate at RCF.  He approached ARUS Bonn and gave him two forms (CSJ-318) requesting disbursement authorization for expedited legal mail handling of two envelopes.  One disbursement request was for certified mail postage for correspondence addressed to the Federal Defender's office in Flint, Michigan.  (docket # 61-2, ID # 572; docket # 95-2, ID # 763).  The other sought approval of a postage disbursement for mail to

---

[1] Plaintiff's response to defendants' motions for summary judgment includes an unsigned and undated affidavit.  (docket # 54-2, ID #s 540-41).  This document cannot be considered because unsigned affidavits "do not comply with Fed. R. Civ. P. 56(e)." *Nassif Ins. Agency v. Civic Prop. & Cas. Ins. Co.*, No. 03-2618, 2005 WL 712578, at * 3 (6th Cir. Mar. 30, 2005)(collecting cases); *see Wanchik v. Great Lakes Health Plan, Inc.*, 6 F. App'x 252, 261 (6th Cir. 2001)("The district court properly rejected unsigned statements in accordance with Fed. R. Civ. P. 56(e)."); *see also Worthy v. Michigan Bell Tel. Co.*, No. 09-11614, 2010 WL 2870313, at * 4 (E.D. Mich. July 21, 2010)(collecting cases).

"Michael Cafferty, Esq." (docket # 61-2, ID # 573; docket # 95-2, ID # 764).  The MDOC's expedited mail process then in effect was governed by Policy Directive 05.03.118 (effective 01/01/06).[2]  The policy directive notified prisoners that the items they were sending through the expedited legal mail process would be subject to verification.  The implementing operating procedure required that prisoners present all such mail unsealed:  "Prisoners shall be required to present the mail unsealed to staff to verify that it qualifie[d] for expedited handling . . . ."  (docket # 86-3, Bonn Aff. ¶¶ 4, 6, ID # 717).  Defendant Bonn asked plaintiff to unseal the two envelopes so that he could verify that the enclosed mail was entitled to expedited mail handling.  Plaintiff could have elected to decline Bonn's request.  In that case, his sealed envelopes would have been mailed under the prison's standard postage disbursement process (Form  CAR-893).  Plaintiff elected to unseal the envelopes, and Bonn verified that plaintiff's name was on the materials.  (Bonn Aff. ¶ 4, ID # 717).  Bonn then approved both disbursement requests, and plaintiff's mail received expedited handling.  (*Id.* at ¶¶ 3, 4, ID # 717).

On May 3, 2007, plaintiff gave defendant Bonn two disbursement requests.  Plaintiff made the first request on the standard disbursement form (CAR-893).  He was not required to submit this envelope unsealed, because he was not requesting expedited mail handling.  (docket # 62-2, ID # 577; Bonn Aff. ¶¶ 5, 6, ID #s 717-18).  He made his second request on an expedited mail disbursement form (CSJ-318).  The addressee was the Federal Defender's office in Flint, Michigan.  (docket # 62-2, ID # 576; docket # 95-2, ID # 763).  Plaintiff was required to submit this envelope unsealed so that Bonn could verify that the mail was entitled to expedited handling.  It is undisputed

---

[2]The current version of Policy Directive 05.03.118 (effective 09/14/09) is not at issue in this lawsuit.

that Bonn approved both disbursement requests. (Bonn Aff. ¶ 6, 7, ID #s 717-18; docket # 61-2, ID #s 576-77; docket # 95-2, ID # 763).

## 2. Mail Room Clerk Joni Fields and ARUS Beverly Weathersby

On August 26, 2008, MCF's mail room received a package addressed to plaintiff sent by prisoner McConnell Adams, # 260400. Adams was an inmate at the Newberry Correctional Facility (NCF) where he was serving a non-parolable life sentence for first-degree murder. (docket # 50, Fields Aff. ¶¶ 4, 5, ID #s 458-59). Ms. Fields drafted a Notice of Mail Rejection (*Id.* at ID # 472). She found that Adams's forty-eight pages of typed text violated Policy Directive 05.03.118 (*Id.* at Ex. A-1, ID #s 461-71) because it represented a threat to MCF's security, good order, discipline, and could facilitate or encourage criminal activity or interfere with prisoner rehabilitation. This volume of material could not be searched properly, and reading through it placed an unreasonable burden on the prison's staff. (Fields Aff. ¶¶ 5, 6, ID #s 458-59).

Beverly Weathersby's job as an ARUS included conducting administrative hearings regarding mail rejections. (docket # 50, Weathersby Aff. ¶ 7, ID # 478). On or about September 1, 2008, plaintiff gave ARUS Weathersby a document labeled as a legal constructive notice:

> The purpose of this LEGAL CONSTRUCTIVE NOTICE is in response to the two Notices of Package/Mail Rejection (CJS-316) that I have recently been presented with from your office. This Notice constitutes my reply (redraft) to the aforementioned presentments.
> * * *
> As to the second presentment, the CJS-316 form claims that my mail was being rejected, as it consists of a "48 page mailing which is being rejected due to the volume of the mailing as it poses a threat to the security of the facility. D and HH."
>
> In my research of the mail policy, *i.e.*, P.D. 05.03.118, I have located nothing therein that limits the number of pages or volume of mail [] incoming to prisoners. Nor does your CJS-316 indicate how this mail poses a threat to institutional security.

(docket # 50, Ex. B-1, ID #s 482-83). When ARUS Weathersby asked plaintiff whether he was going to participate in the hearing, plaintiff stated, "This is my response," and walked away. (Weathersby Aff. ¶ 8, ID # 478).

On September 4, 2008, ARUS Weathersby completed her administrative hearing report. (Weathersby Aff. ¶ 8, ID # 478; Ex. B-4, ID # 488; docket # 61-2, ID # 580). She rejected the mail from prisoner Adams under Policy Directive 05.03.118 because it was a threat to the security, good order, or discipline of the prison facility, or could facilitate criminal activity or interfere with prisoner rehabilitation. The forty-eight pages of typed documents could not be searched properly, and reading through this volume of material placed an unreasonable burden on the prison's staff. (*Id.*). Weathersby subsequently issued amended versions of this hearing report in response to plaintiff's complaints.

On September 5, 2008, plaintiff drafted a "kite" (an informal complaint) to MCF's warden. (docket # 61-2, ID # 581). On September 8, 2008, the warden gave this response:

> In your kite you refer to two separate Mail Rejections.
>
> The Mail Rejection regarding your book was not upheld and the book was sent to you [] today, 9/8/08.
>
> The Mail Rejection regarding the volume of mail, will not be allowed in per Office of Policy and Hearings as this type of mail is considered a threat to security of the facility a single package in large volume cannot be adequately searched and therefore violates Mail Policy, paragraph HH . . . mail which is a threat to the security of the facility . . . because the volume of mail cannot be adequately searched and should be rejected.

(Ex. B-2, ID # 484). On September 10, 2008, Weathersby drafted an amended hearing report adding clarifying information in the "Reason for Disposition" section of her report. (Weathersby Aff. ¶ 9, ID #s 478-79; Ex. B-5, ID # 489). Her amended report erroneously referred to the rejected materials

as a "magazine." (*Id.*). On September 11, 2008, Weathersby issued an amended hearing report which stated, "Prisoner will not be allowed to receive [this] mail. Prisoner will have 15 business days to send [this] paper work out or it will be destroyed according to policy. Mail can not be return[ed] to sender." (Weathersby Aff. ¶ 11, ID # 479; Ex. B-7, ID # 491; docket # 61-2, ID # 583).

On September 24, 2008, MCF's assistant deputy warden wrote a memorandum to the warden addressing complaints by plaintiff regarding perceived deficiencies in Weathersby's report:

> Prisoner Young stated to me that this issue involves a package/mail rejection where he is complaining that he was not present for the administrative hearing and gave no statement. As well, he was not allowed to review the materials that were rejected and wants a copy of the mail rejection notice.
>
> Per R[UM] Barbier and A[RUS] Weathersby, prisoner Young submitted a written statement to Ms. Weathersby and stated, 'Here is my statement,"and left her office. R[UM] Barbier states that Young submits written statements for all hearings or issues that he has with unit management staff and he will not participate in the hearing process.
>
> Please see attached Legal Constructive Notice issued by prisoner Young to A[RUS] Weathersby. Please note the highlighted sections of this notice [in] which he states in part[,] "the purpose of this Legal Constructive Notice is in response to the two notices of package/mail rejection that I have recently been presented with from your office." Based on this statement, it is reasonable to believe that prisoner Young submitted this notice as his statement for the Administrative Hearing on the package/mail rejections. A[RUS] Weathersby['s] completing the administrative hearing without prisoner Young being present [was] reasonable under these circumstances.
>
> As for prisoner Young not being able to review the mail that was rejected, prisoner has grieved this issue as well as received a written reply from the Warden dated September 8, 2008, which upheld the Administrative Hearing [decision] that the volume of the rejected mail would not be allowed in that it could not be adequately searched and [was] therefore in violation of PD 05.03.118, [P]risoner Mail Policy.
>
> It should however be noted that the attached Administrative Hearing [Report] completed by ARUS Weathersby should have included, in part, prisoner Young's statement on the actual administrative hearing report. As well, the report should have included the prisoner's right to appeal the decision of the hearing officer. I discussed this with A[RUS] Weathersby the correct format that must be used when completing fact finding hearings.

(Ex. B-8, ID # 492).

On September 27, 2008, Weathersby "met with plaintiff again," and allowed plaintiff to see "clips" of the material from Adams and allowed plaintiff to amend his hearing statement. (Weathersby Aff. ¶ 13, ID # 479). On September 28, 2008, ARUS Weathersby completed an amended hearing report. (Weathersby Aff. ¶ 13, ID # 479; Ex. B-9, ID # 493; docket # 62-1, ID # 587). This report reflected that plaintiff no longer wanted to rely on his written statement and that his current objection was that the MDOC's policy directive did not contain a specific page limitation for incoming mail. The material sent by prisoner Adams was rejected and plaintiff was informed of his right to file a grievance regarding the hearing decision. On October 1, 2008, Weathersby completed her final hearing report. (Ex. B-12, ID # 497; docket # 61-2, ID # 588). The final report advised plaintiff that he was responsible for the cost of mailing the rejected papers out of the prison. Further, he was advised that he had fifteen days after receipt of this notice within which to send out this mail or it would be destroyed according to policy. Plaintiff did not support his claims against defendants with a copy of the rejected materials. He apparently allowed the papers forming the foundation of his claims against defendants Weathersby and Fields to be destroyed.

On January 26, 2009, plaintiff filed this lawsuit.

## Discussion

1. **Defendant Bonn**

A. <u>First Amendment</u>

Plaintiff asserts First Amendment access to courts claims against defendant Bonn, arising from Bonn's insistence that plaintiff present unsealed envelopes designated for expedited

legal mail processing, as required by prison regulations. These fail because there is no evidence of actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). The actual injury requirement is not satisfied by just any type of frustrated legal claim. The actual injury must be connected to direct pursuit of a non-frivolous direct appeal from a criminal conviction, a habeas corpus petition or a civil rights action under 42 U.S.C. § 1983 to vindicate "basic constitutional rights." *Lewis*, 518 U.S. at 354; *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("'Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.'") (quoting *Lewis v. Casey*, 518 U.S. at 353). Defendant Bonn approved all plaintiff's disbursement requests. There is no evidence that plaintiff's correspondence failed to reach its intended recipients.

The Sixth Circuit has consistently held that whether a document is protected legal mail is a question of law. *See Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009) ("[N]ot all outgoing mail is 'legal mail,' and we have held that what constitutes 'legal mail' is a question of law."); *Sallier v. Brooks*, 343 F.3d 868, 871 (6th Cir. 2003). Therefore, as a threshold matter, the court must first examine the documents that plaintiff claims were legal mail, before proceeding to address issues regarding document handling.[3] *See Sallier*, 343 F.3d at 874-78. Plaintiff's repetition of the legal conclusion that the papers he gave to defendant Bonn were protected legal mail does not suffice at the summary judgment stage. *Doe v. Magoffin County*, 174 F. App'x at 966; *Harrah's*, 100 F. App'x at 394. Plaintiff did not support his claims against defendant Bonn with copies of any of the underlying documents that he claims Bonn mishandled.

---

[3]Negligent handling of a prisoner's mail does not rise to the level of a constitutional violation. *See Sims v. Landrum*, 170 F. App'x 954, 957 (6th Cir. 2006).

Further, plaintiff's disagreement with the MDOC's policy directive and operating procedure under which he was required to submit unsealed mail does not suffice to support a First Amendment claim. A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Procunier*, 417 U.S. at 822); *see Turner v. Safley*, 482 U.S. 78 (1987). Lawful incarceration legitimately requires the retraction or withdrawal of many rights and privileges as a necessary consequence of society's need to deter and punish crime. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Interference with a prisoner's outgoing mail is constitutional if it is reasonably related to legitimate penological interests. *Thornburgh*, 490 U.S. at 413. Prison regulations that impinge upon an inmate's First Amendment rights are subject to analysis under the test of *Turner v. Safley*, 482 U.S. 78 (1987). Under this test, "the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89; *see Thornburg v. Abbott*, 490 U.S. at 413-14 (*Turner* reasonableness standard governs challenges to regulations regarding incoming prisoner mail).

The Supreme Court has laid out four factors relevant to deciding whether a prison regulation affecting a constitutional right withstands constitutional challenge: "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact accommodation of that right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)(quoting *Turner v. Safley*, 482 U.S. 78, 89-90))

It is pellucid from plaintiff's own exhibits that he knew how to submit sealed mail under applicable MDOC procedures. (docket # 62-2, ID # 577). The Michigan Department of Corrections does not limit the amount of outgoing mail a prisoner can send, and it generally allows prisoners to send sealed mail. (P.D. 05.03.118, ¶¶ Q, R, ID # 463). Instances where inmates are required to submit unsealed mail are quite limited, and apply only where there is a significant potential for systemic abuse by prisoners. Verification requirements exist where the State of Michigan is being called upon to loan money to a prisoner or expedite mail handling. With limited exceptions, Michigan's prisoners are required to pay for the cost of postage. (*Id.* at ¶ N, ID # 463). On a monthly basis, the State of Michigan loans indigent prisoners the equivalent of the postage necessary for mailing ten first class letters. After an indigent prisoner has exhausted this monthly postage allotment, the State will loan the prisoner additional funds for the cost of postage for legal mail, but the prisoner is required to submit this mail unsealed, to allow prison staff to verify that the mail qualifies for a supplemental postage loan under the policy directive. The same verification requirement applies to prisoner requests for expedited legal mail handling. If all outgoing prisoner mail became "expedited" by the mere expedient of a prisoner labeling it as such, few items of outgoing mail would lack the expedited label, and the entire purpose of providing an expedited mail system would be defeated. (*Id.* at ¶¶ J-M, O, ID #s 462-63).

The undisputed facts in this case show only that Bonn enforced this policy when plaintiff sought the privilege of sending expedited legal mail. Bonn confirmed that the mail was of a legal nature and processed it according to policy. The policy easily passes review under the *Turner* test. Defendant Bonn is entitled to judgment in his favor as a matter of law on all plaintiff's First Amendment claims.

B.      Sixth Amendment

Plaintiff also asserts a diffuse Sixth Amendment claim against Bonn for somehow interfering with his right to counsel. Plaintiff has not presented evidence supporting his Sixth Amendment claims. Plaintiff did not file copies of his underlying correspondence, and there is no evidence of the substance of those communications. His bare allegation that defendant read three documents does not suffice at the summary judgment stage:

> [T]here must be something more than an allegation that a guard "read" his "legal mail" in his presence and that he was offended or believed this act to be a violation of a state prison regulation. *See Wolff v. McDonnell*, 418 U.S. 539, 576-77, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974)("As to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting . . . .")

*Stanley v. Vining*, 602 F.3d at 770. No reasonable trier of fact could find a Sixth Amendment violation on this record.

## 2.      Defendants Fields and Weathersby

The claims against Fields and Weathersby arise from the rejection of mail from a fellow prisoner addressed to plaintiff. These claims cannot withstand defendants' motion for summary judgment.

A.      First Amendment

"A prison inmate maintains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Johnson v. California*, 543 U.S. 499, 510 (2005). Lawful incarceration legitimately requires the retraction or withdrawal of many right and privileges, as a necessary consequence of society's need to deter and punish crime. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "The Supreme

Court has often reminded that courts are ill-suited to the inordinately difficult task of running a prison, and in general, should defer to the expert judgment of prison officials." *Sheets v. Moore*, 97 F.3d 164, 169 (6th Cir. 1996) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977); and *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)).  The Sixth Circuit recognizes that a prisoner has a limited First Amendment right to receive incoming mail.  *See Boswell v. Mayer*, 169 F.3d 384 (6th Cir. 1999).

Defendant Fields issued the Notice of Mail Rejection and defendant Weathersby subsequently rejected the forty-eight pages of materials sent by prisoner Adams.  Defendants acted under Policy Directive 05.03.118 ¶ HH, finding that mail represented a threat to MCF's security, good order, discipline, and could facilitate or encourage criminal activity or interfere with prisoner rehabilitation.  The volume of material prisoner Adams sent could not be searched properly, and reading through it placed an unreasonable burden on the prison's staff.

Incoming mail poses a particularly high threat to prison safety and security. *Thornburgh v. Abbott*, 490 U.S. at 413.  The applicable standard is the deferential *Turner* standard: whether the challenged regulation is "reasonably related to legitimate penological interests."  490 U.S. at 413.  In *Turner*, the Supreme Court upheld a total ban against inmate-to-inmate correspondence because it was reasonably related to legitimate penological interests.  Lower courts, applying the *Turner* standard, have upheld similar restrictions.  *See e.g.*, *Nasir v. Morgan*, 350 F.3d 366, (3d Cir. 2003) (upholding ban prohibiting correspondence between former inmate and inmate upheld because, among other things, prisoners can develop code or jargon to prevent detection of their real messages and there would be "an inherent risk of missing dangerous communications both

through use of deceptive language and due to the volume of incoming mail that prison staff would be required to read"); *Smith v. Parker*, 7 F. App'x 432, 434 (6th Cir. 2001) (upholding rejection of incoming mail under a policy prohibiting inmates at one prison from providing legal assistance to prisoners at another prison); *Jackson v. Pollard*, No. 07-C-28, 2007 WL 1556867, at * 3 (W.D. Wisc. May 25, 2007) (coded prisoner communications "could be used to further drug trafficking, convey escape plans, relay gang messages, plan disturbances, order attacks on staff and other inmates and engage in other criminal conspiracies"); *Hall v. Johnson*, 224 F. Supp. 2d 1058, 1060 (E.D. Va. 2002) (upholding policy where all general purpose correspondence over one ounce in weight was rejected because it "further[ed] the legitimate governmental interest of institutional security because it allow[ed] mail room personnel to quickly scan a shorter document for potential security risks, such as escape plans"); *Spitsyn v. Morgan*, No. C04-5134, 2008 WL 714095, at * 5 (W.D. Wash. Mar. 14, 2008) (upholding policy rejecting incoming mail written in a foreign language because such correspondence was a threat to institutional safety and security).

Under these authorities, defendants could have rejected *all* prisoner-to-prisoner mail. *A fortiori*, their rejection of a smaller subset (prisoner mail so voluminous that it cannot be readily reviewed for contraband or other threats), passes scrutiny under the *Turner* standard. There is a valid, rational connection between the prison regulation under which the mail from prisoner Adams was rejected and the legitimate governmental interests put forward to justify it. Plaintiff retains the ability to receive other correspondence. Accommodation of the right plaintiff claims would effectively destroy the State's ability to keep harmful material out of the prison. Prisoners could simply hide harmful content within a sufficiently large quantity of other papers to thwart detection. There are no ready alternatives available that fully accommodate the right plaintiff claims at a *de*

*minimis* cost to valid penological objectives. Defendants Fields and Weathersby are entitled to judgment in their favor as a matter of law on all plaintiff's First Amendment claims.

B.    Fourteenth Amendment

Plaintiff argues that defendant Fields and Weathersby violated his Fourteenth Amendment rights by rejecting his mail from prisoner Adams "without a legitimate penological basis" and by not providing him with an adequate opportunity to oppose the rejection. (Plf. Brief at 2, docket # 54, ID # 513).

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest[4] protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Albrecht v. Treon*, No. 09-3703, __ F.3d __, 2010 WL 3306877, at * 3 (6th Cir. Aug. 24, 2010) (quoting *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). In *Procunier v. Martinez*, the Supreme Court recognized a prisoner's limited liberty interest in receiving incoming correspondence. *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). The Court stated that a

---

[4]Property interests "are defined by existing rules or understandings that stem from an independent source such as state law-rules...." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Although property rights are principally created by state law, whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law.... The due process clause only protects those interests to which one has a legitimate claim of entitlement." *Waeschle v. Dragovic*, 576 F.3d 539, 544-45 (6th Cir. 2009).

decision to withhold such correspondence "must be accompanied by minimum procedural safeguards." *Procunier*, 416 U.S. at 418; *accord Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009); *Bradford v. Gerth*, No. 2:07-cv-225, 2009 WL 1406675, at * 2 (W.D. Mich. May 19, 2009). It is sufficient that the prisoner receives notice that his mail is being rejected, has a reasonable opportunity to protest that decision, and receives review by an official other than the person who originally disapproved the correspondence. 416 U.S. at 418.

Here, the process plaintiff received easily exceeded these minimal guarantees. Defendant Fields rejected the mail from Prisoner Adams, and she issued the notice advising plaintiff that incoming mail had been rejected. Defendant Weathersby, not Fields, was the prison official to whom the issue was referred for resolution. Plaintiff had more than a reasonable opportunity to protest the decision rejecting the mail from prisoner Adams. He initially filed a "constructive legal notice" in which he made his argument that he should be allowed to receive the mail from prisoner Adams because number of pages or volume of incoming mail was not specifically listed in paragraph HH of the MDOC's policy directive as a basis for excluding incoming mail. (docket # 50, ID #s 482-83). The hearing officer considered this argument and rejected it. The items specifically listed in sub-paragraphs one through twenty-two of paragraph HH "pose such risks . . . under all circumstances and [must] be rejected." (*Id.*). Plaintiff was allowed to see "clips" of the materials from Adams and made additional arguments. Defendant Weathersby revised her decision to address plaintiff's criticisms. Weathersby found that the mail from Adams represented a threat to MCF's security, good order, discipline, and could facilitate or encourage criminal activity or interfere with prisoner rehabilitation because this volume of material could not be searched properly, and reading through it placed an unreasonable burden on the prison's staff. This is the appropriate standard

under Michigan regulations. Plaintiff has not presented evidence that Weathersby made any error of constitutional magnitude in rejecting the mail from Adams. Plaintiff elected to allow the mail from Adams to be destroyed rather that having it mailed to another address outside the prison. Plaintiff's failure to take steps to preserve this evidence is fatal to his claims. There is no evidence on which a reasonable trier of fact could find that the rejection of the mail from prisoner Adams was improper.

Plaintiff's argument that Weathersby did not comply with the requirements of Michigan's Administrative Procedure Act and P.D. 05.03.118 (Plf. Brief at 3, ID # 511) cannot support a Fourteenth Amendment claim. Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 1741, 75 L.Ed.2d 813 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir.1994). Therefore, defendant Weathersby's alleged failure to comply with MDOC policy directives or administrative rules does not itself rise to the level of a constitutional violation. *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). I find that defendants Fields and Weathersby are entitled to judgment in their favor as a matter of law on plaintiff's Fourteenth Amendment claims.

### 3. Qualified Immunity

Alternatively, defendants are entitled to judgment in their favor on qualified immunity grounds. "The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability." *Perez v. Oakland County*, 466 F. 3d 416, 426 (6th Cir. 2006). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to

qualified immunity. *See Everson v.* Leis, 556 F.3d 484, 494 (6th Cir. 2009); *Hayes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), endorsed a two-prong analysis for addressing qualified immunity issues. The first prong is whether the plaintiff has alleged and supported with evidence[5] facts showing that the defendant's conduct violated a constitutional or statutory right. *Saucier*, 533 U.S. at 201; *see Scott v. Harris*, 550 U.S. 372, 376 (2007). The second prong of the qualified immunity inquiry is whether the right was "clearly established at the time of the defendant's alleged misconduct." *Saucier*, 533 U.S. at 201. Judges are permitted to exercise their "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009); *see Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009). Here, I find that the sequence endorsed by the Court in *Saucier* is appropriate. The first prong of the qualified immunity analysis was addressed in the preceding sections of this report and recommendation: plaintiff has not alleged and supported with evidence facts showing a violation of his federal rights.

---

[5]A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004); *see Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009).

Assuming *arguendo* that plaintiff had been able to satisfy the initial requirement under *Saucier*, he would nonetheless fall short of showing that the rights he claims that each defendant violated were "clearly established" such that a reasonable official in the defendant's position, at the time the act was committed, would have understood that his or her behavior violated that right. 533 U.S. at 201. "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 129 S. Ct. at 822; *see Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez*, 466 F.3d at 428 ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[6] in light of preexisting law, the unlawfulness must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). If judges are in disagreement on an issue at the time the defendant

---

[6]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199.

acted, it is "unfair" to later subject the defendant to monetary damages "for picking the losing side in the controversy." *Pearson*, 129 S. Ct. at 823. "Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("Qualified immunity leaves government authorities 'ample room for mistaken judgments.'") (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n. 9 (6th Cir. 2000)). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).

Plaintiff did not have any clearly established right to expedited handling of his outgoing mail without first having it subjected to verification requirements. *See,* e.g.*, Smith v. Caruso*, No. 2:10-cv-117, 2010 WL 2680727, at * 2 (W.D. Mich. July 6, 2010); *Marr v. James*, No. 1:07-cv-1201, 2010 WL 1997126, at * 2-3 (W.D. Mich. May 19, 2010). There was no clearly established law that issuing a notice of mail rejection or rejecting a package of more than forty-eight pages of typed materials sent by an inmate at another prison violates any constitutional right. *See Turner v. Safley*, 482 U.S. at 91-93 (1987)(upholding a Missouri rule barring all inmate-to-inmate correspondence between prisons). Accordingly, I find that defendants are entitled to judgment in their favor on the alternative basis of qualified immunity.

## Recommended Disposition

For the foregoing reasons, I recommend that defendants' motions for summary judgment (docket #s 44, 85) be granted and that a final judgment be entered in defendants' favor on all plaintiff's claims.


Dated: September 15, 2010          /s/  Joseph G. Scoville
                                   United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).